UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION<br>100 F Street, N.E.<br>Washington, D.C. 20549,<br><br>　　　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>JOHN SAMSON,<br>JOHN G. A. MUNRO,<br>IAN N. CAMPBELL, and<br>JOHN H. WHELAN,<br><br>　　　　　　　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:  C.A. No.<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

### SUMMARY

1.　　This action arises from a foreign bribery scheme involving former employees of subsidiaries of ABB Ltd. ("ABB"), in which illicit payments were offered and made to Nigerian government officials to obtain business for ABB. The defendants in this action -- John Samson, a former regional sales manager for West Africa, John G. A. Munro, a former senior vice president of operations, Ian N. Campbell, a former vice president of finance, and John H. Whelan, a former vice president of sales -- each participated in this scheme by offering, approving, and/or paying bribes to Nigerian officials in furtherance of ABB's bid to obtain a $180 million contract to provide equipment for an oil drilling project in Nigeria's offshore Bonga Oil Field. As a result of

Defendants actions, during the period 1999 through 2001, ABB paid approximately $1 million in bribes to Nigerian officials in connection with ABB's bid on the Bonga contract, which ultimately was awarded to ABB in early 2001.

2. As a result of their participation in this bribery scheme as alleged in this Complaint, Defendants Samson, Munro, Campbell, and Whelan violated the anti-bribery provisions of the Foreign Corrupt Practices Act of 1977, as amended (the "FCPA"), which are codified as Section 30A of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78dd-1]. In addition, by disguising these payments on ABB's books as legitimate expenses through the creation false business records, Defendants violated the books and records and internal control provisions of Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1 [15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1], and aided and abetted ABB's violations of the books and records and internal control provisions of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

## JURISDICTION

3. This court has jurisdiction over this action pursuant to Exchange Act Sections 21(d)(3) and 27 [15 U.S.C. §§ 78u(d)(3) and 78aa]. In connection with the conduct described herein, Defendants made use of the mails and/or the means or instrumentalities of interstate commerce.

**DEFENDANTS**

4.      Defendant John Samson ("Samson"), age 53, is a citizen of the United Kingdom and currently resides in Kuala Lumpur, Malaysia. During the relevant time period, Samson was the regional sales manager for West Africa for Vetco Gray Nigeria Ltd. ("Vetco Gray Nigeria"), a subsidiary of ABB in Nigeria.

5.      Defendant John G. A. Munro ("Munro"), age 47, is a citizen of the United Kingdom and currently resides in Glasgow, Scotland. During the relevant time period, Munro was the senior vice president of operations for Vetco Gray (UK) Ltd. ("Vetco Gray U.K."), a former subsidiary of ABB based in the United Kingdom.

6.      Defendant Ian N. Campbell ("Campbell"), age 59, is a citizen of the United Kingdom and currently resides in Aberdeen, Scotland. Starting in June 2000, through the remainder of the relevant time period, Campbell was the vice president of finance for Vetco Gray U.K.

7.      Defendant John H. Whelan ("Whelan"), age 51, is a citizen of the United States and currently resides in Houston, Texas. During the relevant time period, Whelan was a vice president of sales for Vetco Gray, Inc. ("Vetco Gray U.S."), a former subsidiary of ABB based in the United States.

**RELEVANT ENTITY**

8.      ABB Ltd., a Swiss corporation with headquarters in Zurich, Switzerland, is a global provider of power and automation technologies. ABB's American Depository Receipts have been registered with the Commission pursuant to Exchange Act Section 12(b) [15 U.S.C. § 78(b)] since April 4, 2001, and trade on the New York Stock Exchange. As a foreign issuer, ABB files annual reports with the Commission of Form

20-F. During the relevant time period, ABB had numerous direct and indirect subsidiaries, including Vetco Gray U.S. and Vetco Gray U.K., whose financial results were part of ABB's consolidated financial statements filed with the Commission.

## FACTS

### Overview of the Bribery Scheme

9. In late 1999, bids were solicited for a contract to provide equipment for an oil drilling project in Nigeria's offshore Bonga Oil Field. There were several competitors, including ABB, who had been pre-qualified to bid on the Bonga contract. National Petroleum Investment Management Services ("NAPIMS"), the Nigerian state-owned agency responsible for overseeing oil exploration and production in Nigeria, participated in the tender process by evaluating bids and approving the contract award. In early 2001, ABB was awarded the Bonga contract, which was worth $180 million in revenue to ABB.

10. At times during the period 1999 through 2001, in an effort to obtain the Bonga contract, Defendants, then employees of ABB subsidiaries in the United Kingdom, the United States, and Nigeria, participated in a scheme whereby approximately $1 million in illicit payments and gifts were offered and made to NAPIMS officials. These payments were intended to induce and reward NAPIMS officials for providing ABB with confidential competitor bid information, and securing favorable consideration of ABB's bid on the Bonga contract.

11. The illicit payments were made in two ways. During the tender process in 2000, Samson, Vetco Gray Nigeria's regional sales manager for West Africa, negotiated to pay six NAPIMS officials a total of $800,000 in bribes. Samson subsequently

informed Munro and Campbell who were, respectively, Vetco Gray U.K.'s senior vice president of operations and Vetco Gray U.K.'s vice president of finance, of the payments promised to the NAPIMS officials. At the direction of a senior officer of Vetco Gray U.S. (now deceased), Munro instructed Campbell and Samson to arrange payment to the NAPIMS officials using a local consultant as a conduit (the "Consultant").

12. Subsequently, Samson provided the Consultant with the names of the NAPIMS officials and the amounts promised to each. Campbell arranged to funnel the $800,000 in bribes to the Consultant under cover of false invoices for consulting work. The money was wired to a U.S. bank account belonging to one of the Consultant's companies. From that account, at least a portion of the bribes were wired directly to U.S. bank accounts belonging to NAPIMS officials.

13. In addition, between 1999 and 2001, Samson arranged for Whelan, a vice president of sales at Vetco Gray U.S., to provide gifts and cash to NAPIMS officials when they visited the United States. Using his corporate credit card, and at times obtaining cash advances from Vetco Gray U.S., Whelan paid for NAPIMS officials' accommodations, meals, and car services, and provided them with other gifts and cash while they were in the United States. These illicit payments -- reimbursed by Vetco Gray U.S. and Vetco Gray U.K. -- totaled over $176,000.

**Defendant Samson's Role in the Bribery Scheme**

14. Samson, as the regional sales manager for West Africa, was heavily involved in ABB's efforts to obtain the Bonga contract. In connection with ABB's bid on the Bonga contract, Samson promised to pay six NAPIMS officials a total of $800,000. Samson also arranged for Whelan to pay for hotels, meals, and other gifts for

NAPIMS officials when they were in the United States. Samson communicated with Whelan in the United States concerning these illicit payments both by telephone and email.

15.   Samson promised these payments to NAPIMS officials to obtain competitor bid information, and to obtain favorable influence from NAPIMS officials on behalf of ABB in obtaining the Bonga contract. On at least one occasion during the Bonga tender process, Samson received confidential competitor bid information, by facsimile from the United States, from one of the NAPIMS officials who was receiving illicit payments.

16.   After Samson obtained approval for payment of the $800,000 bribes promised to NAPIMS officials, Samson, working with Campbell, arranged to use the Consultant as a conduit for the payments, and provided the Consultant with the names of the NAPIMS officials and the amounts promised to each.

17.   Samson personally profited from this bribery scheme by obtaining $50,000 in kickbacks from one of the NAPIMS officials who received illicit payments. Samson received these kickbacks via two $25,000 checks from the NAPIMS official in May and July 2001. Both checks were drawn on a U.S. bank account belonging to the NAPIMS official.

### Defendants Munro's and Campbell's Roles in the Bribery Scheme

18.   After promising to pay $800,000 to the NAPIMS officials, Samson informed Munro and Campbell, Vetco Gray U.K.'s senior vice president of operations and Vetco Gray U.K.'s vice president of finance, of the payments promised to the NAPIMS officials. At the direction of a senior officer of Vetco Gray U.S. (now

deceased), Munro instructed Campbell and Samson to use the Consultant as a conduit for the payments.

19.     Campbell prepared and executed, on behalf of Vetco Gray U.K., a consulting agreement between Vetco Gray U.K. and one of the Consultant's companies. Campbell then approved payment of phony invoices for consulting services submitted by the Consultant's company under that agreement. The Consultant also submitted a phony invoice for consulting services through Vetco Gray U.K.'s affiliate in Singapore. Vetco Gray U.K. and its affiliate made payment on these phony invoices by three wire transfers in March, May, and July 2001, totaling $845,300, to a U.S. bank account belonging to one of the Consultant's companies. From that account, at least a portion of these illicit payments was subsequently wired directly to other U.S. bank accounts belonging to NAPIMS officials.

### Defendant Whelan's Role in the Bribery Scheme

20.     From at least 1999 through 2001, as part of the effort to obtain the Bonga contract, Whelan, a vice president of sales for Vetco Gray U.S. based in Houston, Texas, provided illicit payments to and for NAPIMS officials when they visited the United States, in the form of lodging, meals, cash and other gifts. Whelan made these illicit payments to obtain for ABB confidential competitor information and other improper assistance from NAPIMS officials in connection with ABB's bid on the Bonga contract.

21.     Whelan often used his corporate credit card, and at times obtained cash advances from Vetco Gray U.S., to make these illicit payments. From June 1999 through August 2001, Whelan provided over $176,000 in payments and gifts to NAPIMS officials. Whelan submitted expense reports for many of these illicit payments, under the

guise of legitimate business expenses, and obtained reimbursement from Vetco Gray U.S. and Vetco Gray U.K.

## FIRST CLAIM
### (Bribery)

**[Violations of Exchange Act Section 30A
Against All Defendants]**

22. Paragraphs 1 through 21 are re-alleged and incorporated by reference.

23. As described above, Defendants Samson, Munro, Campbell, and Whelan, acting on behalf of ABB and its subsidiaries, made use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value, to foreign officials for the purposes of influencing their acts or decisions, securing an improper advantage, or inducing them to use their influence, to assist ABB in obtaining or retaining business.

24. By reason of the foregoing, Defendants Samson, Munro, Campbell, and Whelan violated Exchange Act Section 30A [15 U.S.C. § 78dd-1].

## SECOND CLAIM
### (Books and Records and Internal Controls)

**[Violations of Exchange Act Section 13(b)(5) and Rule 13b2-1
Against All Defendants]**

25. Paragraphs 1 through 24 are re-alleged and incorporated by reference.

26. As described above, Defendants Samson, Munro, Campbell, and Whelan knowingly circumvented ABB's internal accounting controls and, directly or indirectly, falsified, or caused to be falsified, books, records, or accounts of ABB subject to Exchange Act Section 13(b)(2) [15 U.S.C. § 78m(b)(2)].

27. By reason of the foregoing, Defendants Samson, Munro, Campbell, and Whelan violated Exchange Act Section 13(b)(5) and Exchange Act Rule 13b2-1 [15 U.S.C. § 78m(b)(5) and 17 C.F.R. § 240.13b2-1].

### THIRD CLAIM
### (Books and Records and Internal Controls)

**[Aiding and Abetting Violations of Exchange Act Sections 13(b)(2)(A) and (B) Against All Defendants]**

28. Paragraphs 1 through 27 are re-alleged and incorporated by reference.

29. ABB inaccurately recorded the bribery payments as legitimate consulting fees and other business expenses in its consolidated books and records in violation of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)]. Defendants Samson, Munro, Campbell, and Whelan knowingly provided substantial assistance to ABB in inaccurately recording these payments in ABB's books and records.

30. By reason of the foregoing, Defendants Samson, Munro, Campbell, and Whelan aided and abetted ABB's violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

## RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court enter judgments:

(a) permanently enjoining Defendants Samson, Munro, Campbell, and Whelan from violating Exchange Act Sections 30A and 13(b)(5) [15 U.S.C. §§ 78dd-1 and 78m(b)(5)], and Exchange Act Rule 13b2-1 [17 C.F.R. § 240.13b2-1], and from aiding and abetting violations of Exchange Act Sections 13(b)(2)(A) and 13(b)(2)(B) [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)];

(b) ordering Defendant Samson to disgorge, with prejudgment interest, ill-gotten gains he received in connection with the bribery scheme;

(c) ordering Defendants Samson, Munro, Campbell, and Whelan to pay civil penalties pursuant to Exchange Act Sections 21(d)(3) and 32(c) [15 U.S.C. §§ 78u(d)(3) and 78ff(c)]; and

(d) granting such other and further relief as is just and appropriate.

Respectfully submitted,

_____
Scott W. Friestad
Robert B. Kaplan
Brian O. Quinn
Michelle Giard Draeger

Attorneys for Plaintiff
Securities and Exchange Commission
100 F Street, N.E.
Washington, D.C. 20549-5561
(202) 551-4982 (Quinn)

Dated: July 5, 2006